UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ALEXANDER A. BENZEMANN,

                    Plaintiff,

          -against -                        **MEMORANDUM AND ORDER**

CITIBANK N.A., HOUSLANGER ASSOCIATES        12 Civ. 9145 (NRB)
PLLC, TODD E. HOUSLANGER, NEW CENTURY
FINANCIAL SERVICES
                    Defendants.
------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

          Plaintiff Alexander Benzemann ("Benzemann" or "plaintiff")
brings this action against Citibank N.A. ("Citibank"), as well
as against Houslanger Associates PLLC ("H&A"), Todd E.
Houslanger ("Houslanger"), and New Century Financial Services
("New Century") (collectively the "Houslanger defendants").
Plaintiff alleges violations of the Fair Debt Collection
Practices Act, 15 U.S.C. § 1692 et seq. (the "FDCPA"); the
Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. (the
"EFTA"); 42 U.S.C. § 1983 ("§ 1983"); and the Due Process Clause
of the Fourteenth Amendment.  He further alleges ten causes of
action under state law.

          Presently before the Court are two motions.  First,
defendant Citibank has moved, pursuant to the Federal
Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), to dismiss
the complaint as against Citibank and to compel arbitration of

plaintiff's claims.    Second, the Houslanger defendants have moved to dismiss the complaint as against them based on plaintiff's failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).    For the reasons stated herein, we grant both motions, although we dismiss plaintiff's state law claims against the Houslanger defendants without prejudice.

**BACKGROUND**

**I.   Factual Background**

On April 25, 2003, a judgment was entered in the Civil Court of the City of New York in favor of New Century, an assignee of Citibank, and against Andrew Benzemann, plaintiff's brother, in the sum of $12,942.01.  Am. Compl. ¶ 11; Mem. of Law in Supp. of Def. Houslanger & Associates, PLLC & Todd E. Houslanger's Mot. to Dismiss ("Houslanger Mem.") at 3.   At no point was plaintiff a party to that action, but he did maintain his own account at Citibank.   Am. Compl. ¶ 12.

About five years later, on April 30, 2008, Citibank froze plaintiff's bank account and sent him a letter that referenced the judgment against his brother.  Id. ¶ 13-14.  Citibank also provided plaintiff with a copy of the restraining notice, which was executed by Houslanger as attorney for New Century, the judgment creditor.  Id. ¶ 15.  The restraining notice identified Andrew Benzemann as the judgment debtor, but the social security

2

number and address were that of Alexander Benzemann, the plaintiff.  Id. ¶ 17.  Plaintiff claims to have contacted H&A and Citibank immediately after his account was frozen in an attempt to lift the restraint, but he alleges that they did not immediately retract the restraining notice.  Id. ¶ 22-23. Plaintiff then retained counsel, and it was only when he threatened legal action that the restraining notice was withdrawn.  Id. ¶ 24.  Plaintiff maintains that as a result of his account being restrained, he suffered financial harm and severe emotional distress.  Id. ¶ 26.

More than three-and-a-half years later, nearly the exact same events took place.  On December 14, 2011, Citibank again froze plaintiff's account pursuant to a restraining notice issued by Houslanger on behalf of New Century based on the same judgment.  Id. ¶ 27-29.  Once again, Citibank provided plaintiff with a copy of the restraining notice, which was dated December 6, 2011.  Id.  The errors contained in the restraining notice were the same as they were in April 2008: the party named was Andrew Benzemann, the judgment debtor and plaintiff's brother, but the social security number and address provided to the bank were those of plaintiff Alexander Benzemann.  Id. ¶ 31.  The following day -- December 15, 2011 -- plaintiff's counsel spoke with defendants and the restraint on the account was lifted.

3

Id. ¶ 35; see also Tr. of Oral Arg., June 5, 2014, 3:18–19. Plaintiff alleges that during the one-day freeze, Citibank failed to make three electronic funds transfer payments that had previously been directed. Am. Compl. ¶ 36. In addition, plaintiff claims that he incurred fees from both Citibank and a credit card company, had two credit cards canceled, sustained an injury to his credit score, and suffered severe emotional distress as a result of the restraint. Id. ¶ 37.

## II.  Procedural Posture

Plaintiff filed his initial complaint on December 14, 2012, and he filed an amended complaint on June 6, 2013. The amended complaint asserts fourteen claims for relief against Citibank and ten against the Houslanger defendants. See id. ¶¶ 38–87. Under federal law, plaintiff asserts FDCPA, § 1983, and due process claims against all defendants, and asserts a separate EFTA claim against Citibank.

Citibank moved to dismiss the amended complaint and to compel arbitration on September 20, 2013. H&A and Houslanger moved to dismiss the amended complaint on September 27, 2013, and this Court granted New Century's motion to join the H&A and Houslanger motion to dismiss on October 18, 2013. Both motions were fully briefed by December 13, 2013, and we conducted oral argument on both motions on June 5, 2014.

**DISCUSSION**

**I.  Citibank Motion to Compel Arbitration**

Plaintiff does not dispute that, by virtue of opening an account at Citibank, he was subject to the arbitration agreement contained in the Citibank client manual.  Benzemann's claims against Citibank arise out of both the April 2008 freeze of his bank account and the second restraint in December 2011. Although different client manuals were operative during each of these incidents, the language of the arbitration provisions contained in each of the relevant manuals are substantially similar, and plaintiff does not assert otherwise.  The arbitration agreement (the "Agreement") reads as follows:

> **Agreement to Arbitrate Disputes**: Either you or we may elect, without the other's consent, to require that any dispute between us, or concerning your . . . accounts, except those disputes specifically excluded below, be resolved by binding arbitration.
>
> **Disputes Covered by Arbitration**: Any claim or dispute relating to or arising out of your . . . account, this Agreement, or our relationship will be subject to arbitration. . . . Disputes also include claims relating to the enforceability or interpretation of any of these arbitration provisions.  Any questions about whether disputes are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.
>
> **Disputes Excluded from Arbitration**: Disputes filed by you or by us individually in a small claims court are not subject to arbitration, so long as the disputes remain in such court and advance only an individual claim for relief.

5

Citibank Client Manual: Consumer Accounts, Dec. 9, 2011 ("Client Manual"), at 49-50.

The parties agree that the FAA applies to our analysis of the Agreement.  Mem. of Law in Supp. of Mot. to Dismiss the Compl. & to Compel Arbitration ("Citibank Mem.") at 5; Mem. in Opp'n to Def. Citibank's Mot. to Dismiss the Compl. & to Compel Arbitration ("Pl.'s Citibank Opp'n") at 7.  "The Federal Arbitration Act reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'"  KPMG LLP v. Cocchi, 132 S. Ct. 23, 25 (2011) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)); see also Garten v. Kurth, 265 F.3d 136, 142 (2d Cir. 2001) ("Under the FAA, courts are required generally to resolve questions of arbitrability in favor of arbitration.").  "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms."  Am. Exp. Co. v. Italian Colors Restaurant, 133 S. Ct. 2304, 2309 (2013) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)).

Under federal law, parties to an arbitration agreement "may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996).  If that issue is the arbitrability of a particular dispute, there is a general

presumption that courts, rather than arbitrators themselves, should decide the matter.  See Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 406 (2d Cir. 2009); Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005). But that presumption can be rebutted when "there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator."  Contec, 398 F.3d at 208 (quoting Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002)) (internal quotation marks omitted); see also Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68-69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").

"Precisely what constitutes 'clear and unmistakable evidence' is somewhat unsettled."  Holzer v. Mondadori, No. 12 Civ. 5234(NRB), 2013 WL 1104269, at *7 (S.D.N.Y. Mar. 14, 2013). However, recent decisions in this District demonstrate that while "clear and unmistakable evidence" is a high bar, it is not an insurmountable one.  See, e.g., Crewe v. Rich Dad Educ., LLC, 884 F. Supp. 2d 60, 85 (S.D.N.Y. 2012) (finding that a statement that "all determinations as to the scope, enforceability, and effect of this Dispute Resolution section shall be decided by

the arbitrator and not by a court" delegated questions of enforceability to an arbitrator); Kuehn v. Citibank, N.A., No. 12 Civ. 3287(DLC), 2012 WL 6057941, at *4 (S.D.N.Y. Dec. 6, 2012) (holding that a provision of an arbitration agreement which committed to arbitration "claims relating to . . . [the] application, enforceability or interpretation of my Account, including this arbitration provision" "plainly delegate[d] resolution of questions about the arbitration agreement's enforceability to an arbitrator"); Washington v. William Morris Endeavor Entm't, LLC, No. 10 Civ. 9647(PKC)(JMF), 2011 WL 3251504, at *6 (S.D.N.Y. July 20, 2011) (finding that a provision which delegated to an arbitrator the "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" demonstrated that the parties intended issues of arbitrability to be subjection to arbitration).

Here, the plain language of the Agreement provides clear and unmistakable evidence that plaintiff and Citibank agreed to arbitrate the question of arbitrability.  The Agreement states that "Any claim or dispute relating to . . . this Agreement . . . will be subject to arbitration."  Client Manual at 49.  It further defines "dispute" as inclusive of "claims relating to the enforceability or interpretation of any of these arbitration

provisions." Id.   Plaintiff has raised no argument suggesting that this delegation provision itself is unconscionable, and we will therefore enforce it according to its terms. See Rent-A-Center, 531 U.S. at 72-74; Kuehn, 2012 WL 6057941, at *4. As a result, the issue of whether plaintiff's claims fall under the Agreement is appropriately decided by arbitration, and we therefore grant Citibank's motion to dismiss the case as to Citibank and compel arbitration.

We further note that if this Court reached the merits of whether Benzemann's claims fall under the Agreement, we would find that they do, and we would grant Citibank's motion on this alternative ground.  The first step in deciding whether an agreement provides for arbitration of a dispute is to determine whether the scope of the arbitration clause is broad or narrow. See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001); Grenawalt v. AT & T Mobility, LLC, 937 F. Supp. 2d 438, 456 (S.D.N.Y. 2013).  "In the Second Circuit, the class of arbitration clauses considered 'narrow' is, functionally, a class of one." China Auto Care, LLC v. China Auto Care (Caymans), 859 F. Supp. 2d 582, 586 (S.D.N.Y. 2012) (referencing In re Kinoshita & Co., 287 F.2d 951 (2d Cir. 1961)).

The language of the Agreement clearly indicates that it was intended by the parties to be broad in scope.  Not only does that Agreement provide that it be construed in the "broadest way" possible, but it also states that "any dispute" between the accountholder and Citibank can be sent to arbitration by either party.  Client Manual at 49.  The invocation of "any dispute" in the Agreement "is the paradigm of a broad clause." Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995); see also ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 33 (2d Cir. 2002) (describing "any dispute" as a "broad phrase"); Alghanim v. Alghanim, 828 F. Supp. 2d 636, 653 (S.D.N.Y. 2011) (finding the phrase "any dispute aris[ing] in the future" to be broad); Alemac Ins. Servs., Inc. v. Risk Transfer Inc., No. 03 Civ. 1162(WHP), 2003 WL 22024070, at *4 (S.D.N.Y. Aug. 28, 2003) (collecting cases in which similarly worded provisions were found to be broad). While the Agreement does note that there is an exception to the "any dispute" language -- namely, if either party brings a claim in small claims court -- this exception does not alter our conclusion that this is an unquestionably broad agreement to arbitrate disputes.  Consequently, "there arises a presumption of arbitrability." Louis Dreyfus Negoce, 252 F.3d at 224

(quoting Collins & Aikman, 58 F.3d at 23) (internal quotation marks omitted).

The burden then shifts to plaintiff to overcome this presumption of arbitrability. Where an arbitration clause is broad, the resulting "presumption of arbitrability . . . is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (citations and internal quotation marks omitted). Benzemann maintains that his claims fall outside those for which Citibank may compel arbitration because (1) the dispute is not "focused primarily on" plaintiff's account, but rather on the debt collection process; (2) the dispute at issue concerns additional parties (the Houslanger defendants) beyond himself and Citibank; and (3) granting Citibank's motion for arbitration would result in piecemeal litigation because of the multiple defendants in this case. Pl.'s Citibank Opp'n at 16–18.

Plaintiff's arguments are without merit. His suggested construction of the Agreement is tortured at best. Nowhere in the Agreement does it require that a dispute be "focused primarily on" the customer's account in order for it to be arbitrable, nor does it require that a dispute be "solely"

11

between a customer and Citibank to qualify it for arbitration. Instead, the Agreement provides that "[a]ny claim or dispute relating to or arising out of" the customer's account may be brought to arbitration by either party.   Client Manual at 49. The essence of plaintiff's claims against Citibank are that his account was improperly restrained -- such claims clearly "relate to" Benzemann's account at Citibank.   Moreover, although plaintiff may be required to arbitrate his claims with Citibank and litigate his claims against the Houslanger defendants, this outcome is completely acceptable under federal law.   Dean Witter Reynolds, 470 U.S. at 220-21; Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983).

Thus, if this Court were to decide the question of whether plaintiff's dispute with Citibank is subject to arbitration under the Agreement -- rather than compelling arbitration of that question, as is our holding -- we would find that plaintiff's claims are plainly covered.   This determination reinforces our decision to grant the motion to dismiss the complaint as to Citibank and to compel arbitration.

## II.   Houslanger Motion to Dismiss

### A.   Fair Debt Collection Practices Act

According to the amended complaint, the Houslanger defendants sent Citibank two improper restraining notices: one

dated April 21, 2008 and another dated December 6, 2011.  Am. Compl. ¶¶ 13, 27.  As a result of the information contained on these notices, plaintiff's Citibank account was frozen first on April 30, 2008 and then again on December 14, 2011.  Id. Plaintiff did not file his original complaint against the Houslanger defendants until December 14, 2012.

Under the FDCPA, "[a]n action to enforce any liability created by this subchapter may be brought . . ." within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  The Houslanger defendants assert that a "violation" of the FDCPA "occurs" on the date when the offending communication was sent, not when it was received or discovered by the plaintiff.  See Houslanger Mem. at 5-7; Reply Mem. of Law in Further Supp. of Defs. Houslanger & Associates, PLLC & Todd E. Houslanger's Mot. to Dismiss the Am. Compl. at 1-3. Consequently, they maintain that plaintiff's claims under the FDCPA are not timely, as they were filed more than one year after December 6, 2011, the date when the last allegedly illegal communication was sent.  Plaintiff counters that the discovery rule should apply.  Application of the discovery rule would begin the statute of limitations clock when plaintiff learned of his cause of action and it would, in this case, render plaintiff's claim as to the second restraining notice timely.

13

Mem. in Opp'n to Defs. Houslanger & Associates PLLC & Todd E. Houslanger's Mot. to Dismiss the Am. Compl. ("Pl.'s Houslanger Opp'n") at 10. For the reasons set forth below, we agree with the Houslanger defendants.

The Supreme Court has not yet decided the issue of when the statute of limitations begins to run in an FDCPA action, and opinion among the circuits is split. Compare Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir. 1995) (calculating the statute of limitations period for an FDCPA claim as beginning the day after the collection letter was mailed), and Mattson v. U.S. West Commc'ns, Inc., 967 F.2d 259, 261 (8th Cir. 1992) ("The date on which [defendant] mailed the letters was its last opportunity to comply with the FDCPA, and the mailing of the letters, therefore, triggered section 1692k(d)."), with Lembach v. Bierman, 528 F. App'x 297, 302 (4th Cir. 2013) (applying the discovery rule to a FDCPA action), and Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 941 (9th Cir. 2009) (same). Here in the Second Circuit, the precedent is also mixed. Compare Wright v. Zabarkes, 347 F. App'x 670, 671 (2d Cir. 2009) (referencing "the issuance of the . . . demand letter" as the relevant date for the calculation of the FDCPA statute of limitations) (emphasis added), and Schuh v. Druckman & Sinel, LLP, 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009)

(beginning the statute of limitations period on the date when the offending communication was sent), with Bates v. C & S Adjusters, Inc., 980 F.2d 865, 868 & n.2 (2d Cir. 1992) (noting that, although the court was not deciding the statute of limitations question, an individual is not harmed under the FDCPA until receiving the collection notice), and Berrios v. Sprint Corp., No. CV-97-0081 (CPS), 1997 WL 777945, at *4 (E.D.N.Y. Nov. 13, 1997) ("[T]he statute of limitation on [the plaintiff's] FDCPA claim is one year from the date she received the letter not the date the letter was sent.").

Given the contradictory precedent, both within our Circuit and among the appellate courts, our task of interpreting the statute of limitations provision of the FDCPA "begins where all such inquiries must begin: with the language of the statute itself." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989). Certain federal statutes are written in such a way that the statute of limitations period begins on the date of "discovery of the facts constituting the violation," e.g., 15 U.S.C. § 78i(f) (the Securities Exchange Act of 1934); others commence the statute of limitations period on the date when "the claim accrued," e.g., 17 U.S.C. § 507(b) (the Copyright Act of 1976). In those circumstances, applying a discovery rule comports with -- or at least does not contradict -- the plain

15

language of the statute.  See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991) (applying the discovery rule to the Securities Exchange Act); Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124 (2d Cir. 2014) (applying the discovery rule to the Copyright Act).

Here, the language of the FDCPA begins running the statute of limitations "on the date when the violation occurs."  15 U.S.C. § 1692k(d).  This language stands in contrast to those statutes that either explicitly provide for a discovery rule or at least delay the start of the statute of limitations until the plaintiff's claim accrues.  Moreover, a statute that "key[s] the start of the limitations period to 'the date of the occurrence of the violation'" "plainly establish[es]" that Congress did not intend for the discovery rule to apply.  TRW Inc. v. Andrews, 534 U.S. 19, 32 (2001).  Therefore, based on the wording of the statute, the FDCPA limitations period begins to run not when the plaintiff discovers his injury, but when the defendant allegedly committed the violation.

Not only does this interpretation conform to the language of the statute, but it also advances the purposes of the FDCPA. We recognize that Congress passed the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors," Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir.

2002), and that the law was "designed to protect all consumers, 'the gullible as well as the shrewd,'" Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010) (quoting Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008)). However, the way that the FDCPA aimed to protect consumers was through regulating the conduct of debt collectors. See 15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors. . . ."); Tyler v. DH Capital Mgmt., Inc., 736 F.3d 455, 464 (6th Cir. 2013) ("As the purpose of the FDCPA is to regulate the actions of debt collectors, the focus should be on the debt collector's actions, not on the awareness of the debtor." (citations and internal quotation marks omitted)). Thus, in construing the FDCPA's provisions, the relevant actions are those of the debt collector -- the party whose conduct the FDCPA was intended to regulate -- rather than those of the debtor. It is therefore the debt collector's alleged violation that triggers the FDCPA statute of limitations, not the awareness of the plaintiff.

With that established, our determination of the date on which the statute of limitations began to run in this case hinges on the following two-part question: (1) what is the alleged violation and (2) when did it occur? In his complaint,

17

plaintiff states that all "Defendants' actions or inactions in attempting to collect the Andrew Benzemann judgment, including creating or processing the Restraining Notices," constitute violations of the FDCPA.  Am. Compl. ¶ 40.  Plaintiff is correct that a mere attempt to collect a debt, even if unsuccessful, may be actionable under the FDCPA.  See 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); id. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.").  Here, Citibank committed its alleged violation by processing the restraining notices and freezing plaintiff's account, but the Houslanger defendants committed their alleged violation by sending Citibank the purported "false, deceptive, or misleading representation" in the form of restraining notices.  It is of no import, for statute of limitations purposes, that plaintiff was not aware of this violation until some later date.  Therefore, the Houslanger defendants' last potential violation of the FDCPA was their transmission of the second restraining notice to Citibank, and this event occurred on the date when the notice was mailed: December 6, 2011.

For reasons that escape this Court, although plaintiff first contacted his counsel on December 14, 2011, the very

evening when his Citibank account was frozen, plaintiff's counsel waited an entire year before filing a complaint. <u>See</u> Tr. of Oral Arg. 17:7-8.  When plaintiff finally brought the instant action on December 14, 2012, it had been one year and eight days since the final restraining notice was mailed, and the statute of limitations under the FDCPA had lapsed. Accordingly, we dismiss plaintiff's FDCPA claim against the Houslanger defendants.

> **B.    Section 1983**

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights under color of state law.  Anyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983." <u>Filarsky v. Delia</u>, 132 S. Ct. 1657, 1662 (2012) (internal quotation marks omitted).  The determination of whether a private party operates as a state actor "is necessarily fact-specific, as 'no one fact can function as a necessary condition across the board . . . nor is any set of circumstances absolutely sufficient.'"  <u>Sykes v. Bank of Am.</u>, 723 F.3d 399, 406 (2d Cir. 2013) (quoting <u>Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 295 (2001)).  Broadly, however, the conduct of a nominally private entity may be attributable to the state when:

(1) the entity acts pursuant to the "coercive power"
of the state or is "controlled" by the state ("the
compulsion test"); (2) when the state provides
"significant encouragement" to the entity, the entity
is a "willful participant in joint activity with the
[s]tate," or the entity's functions are "entwined"
with state policies ("the joint action test" or "close
nexus test"); or (3) when the entity "has been
delegated a public function by the [s]tate," ("the
public function test").

Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255,

257 (2d Cir. 2008) (citing Brentwood Acad., 531 U.S. at 296);

accord Rodriguez v. Winski, 973 F. Supp. 2d 411, 421 (S.D.N.Y.

2013).

Here, plaintiff asserts that the Houslanger defendants

qualify as state actors under the third prong listed above: the

"public function" test.  See Pl.'s Houslanger Opp'n at 24.  This

test is "quite narrow," Forbes v. City of New York, No. 05 Civ.

7331(NRB), 2008 WL 3539936, at *4 (S.D.N.Y. Aug. 12, 2008), and

it requires that the private defendants performed a function

that is "traditionally the exclusive prerogative of the State."

Jackson v. Metro. Edison Co., 419 U.S. 345, 353 (1974).

Plaintiff's argument -- and with it, his § 1983 claim --

fails.  We begin by noting that placing a restraint on an

individual's bank account is not "the exclusive prerogative of

the State."  In fact, the very restraining notices at issue here

were generated and mailed by a private attorney acting on behalf

of a private creditor.  See Am. Compl. ¶¶ 16, 30; cf. Sykes, 723

20

F.3d at 406 (recognizing that banks regularly comply with restraining notices issued by private attorneys acting on behalf of private creditors).  Thus, plaintiff cannot satisfy even the baseline requirement of the public function test.

Moreover, treating the Houslanger defendants as having been delegated a public function by the state simply because they obtained a state court judgment for Andrew Benzemann's debts would transform a narrow avenue for § 1983 liability into something far too expansive.  See Sanchez v. Hoosac Bank, No. 12 Civ. 8455(ALC), 2014 WL 1326031, at *6 ("The public function test as applied is quite stringent and under the doctrine an extraordinarily low number of functions have been held to be public." (quoting Doe v. Harrison, 254 F. Supp. 2d 338, 343 (S.D.N.Y. 2003)) (internal quotation marks omitted)).  Thus, it is important to make clear that "[t]he mere fact that defendants utilized state statutes to pursue a state court remedy against the plaintiff does not constitute 'state action' by private parties."  Johnson v. Chemical Bank, No. 96 CIV. 4262(SS), 1996 WL 706893, at *5 (S.D.N.Y. Dec. 9, 1996); see also Shetiwy v. Midland Credit Mgmt., 980 F. Supp. 2d 461 (S.D.N.Y. 2013) (dismissing constitutional claims against debt collectors because they are not state actors); McCarthy v. Wachovia Bank, N.A., 759 F. Supp. 2d 265, 277 (E.D.N.Y. 2011) (finding that a

private attorney and his law firm who attempted to restrain an individual's bank account were not acting under color of state law). As private actors attempting to satisfy a debt owed to a private entity, the Houslanger defendants were neither performing a public function nor, in any way, acting under color of state law. Consequently, plaintiff's § 1983 claim against the Houslanger defendants is dismissed.

### C.   Due Process

Plaintiff further alleges that the Houslanger defendants' conduct violated his Fourteenth Amendment due process rights. Am. Compl. ¶ 87. "Whether conduct constitutes state action under the Fourteenth Amendment or 'under color of state law' pursuant to § 1983 presents the same question." Suss v. Am. Soc'y for Prevention of Cruelty to Animals, 823 F. Supp. 181, 186 (S.D.N.Y. 1993) (citing Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)); see also Staudinger v. Educ. Comm'n for Foreign Med. Graduates, No. 92 Civ. 8071 (LJF), 1993 WL 138954, at *2 (S.D.N.Y. Apr. 28, 1993) ("[W]hether framed as 'state action' for purposes of the 14th amendment or action 'under color of state law' for purposes of § 1983, the applicable legal standards are the same." (citing Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 935 (1982))). Based on our earlier ruling that the Houslanger defendants were not acting under color of

state law for § 1983 purposes, it follows that their conduct was also not state action under the Fourteenth Amendment.  Thus, we dismiss plaintiff's federal due process claim against the Houslanger defendants.

### D.   Pendent State Law Claims

Plaintiff also brings multiple claims against the Houslanger defendants under state law.  A federal district court may decline to assert supplemental jurisdiction over pendent state law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Indeed, "it is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." Pajooh v. Dep't of Sanitation City of N.Y., 547 F. App'x 73 (2d Cir. 2013) (quoting Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006)) (internal quotation marks omitted); see also N.Y. Mercantile Exch., Inc. v. IntercontinentialExchange, Inc., 497 F.3d 109, 119 (2d Cir. 2007) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (quoting Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998)) (internal quotation marks omitted)).  As discussed above, we have dismissed all claims asserted against

the Houslanger defendants for which there exists federal-question jurisdiction. Accordingly, we decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims against the Houslanger defendants, and we hereby dismiss those claims without prejudice.

## CONCLUSION

For the aforementioned reasons, Citibank's motion to dismiss the complaint and compel arbitration is granted, and the Houslanger defendants' motion to dismiss is granted insofar as this Court dismisses all federal claims with prejudice and the state law claims without prejudice. This Memorandum and Order resolves docket numbers 24 and 29, and the Clerk of Court is respectfully requested to close this case.


**SO ORDERED.**


Dated:      New York, New York
            June *27*, 2014


                            _____
                            NAOMI REICE BUCHWALD
                            UNITED STATES DISTRICT JUDGE




24

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Edward P. Kelly, Esq.
Andrew Tiajoloff, Esq.
Tiajoloff & Kelly LLP
Chrysler Building, 37th Floor
405 Lexington Avenue
New York, NY 10174

Barry J. Glickman, Esq.
Anthony I. Giocobbe, Esq.
Zeichner Ellman & Krause LLP
1211 Avenue of the Americas, 40th Floor
New York, NY 10036

Robert J. Bergson, Esq.
Eric B. Post, Esq.
Abrams Garfinkel Margolis Bergson, LLP
1430 Broadway, 17th Floor
New York, NY 10018

Mitchell L. Williamson, Esq.
Pressler and Pressler LLP
7 Entin Road
Parsippany, NJ 07054